Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

TERRY FABRICANT, individually
and on behalf of all others similarly
situated,

Plaintiff,

vs.

AMERISAVE MORTGAGE
CORPORATION, and DOES 1
through 10, inclusive, and each of
them,

Defendant.

Case No. 2:19-cv-04659-AB-AS

**CLASS ACTION**

**PLAINTIFF'S NOTICE OF
MOTION & MOTION FOR FINAL
APPROVAL OF CLASS
SETTLEMENT**

Assigned to the Honorable Andre'
Birotte, Jr.

**DATE:** NOVEMBER 20, 2020
**TIME:** 10:00 A.M.
**COURTROOM:** 7D

[Filed and Served Concurrently with
Declaration of Todd M. Friedman;
Declaration of Terry Fabricant
[Proposed] Order]

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, November 20, 2020 at 10:00 a.m., before the United States District Court, Central District of California, Courtroom 7D, 350 W. 1st Street, Los Angeles, California 90012 (7th Floor) plaintiff Terry Fabricant ("Plaintiff") will move this Court for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: August 31, 2020

**The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. PROCEDURAL HISTORY ........................................................................2

III. SETTLEMENT .........................................................................................3

    A. The Fairness Hearing ........................................................................3

    B. Attorneys' Fees, Costs Application, And Service Awards ...............4

    C. Class Action Settlement Terms .........................................................4

        1. The Class ......................................................................................4

        2. Class Recovery .............................................................................4

V. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL............5

    A. CAFA Notice ....................................................................................5

    B. Email and Mail Notice ......................................................................5

    C. Digital Notice ....................................................................................6

    D. Detailed Notice Posted On The Settlement Website ........................6

    E. Toll-Free Information Line ................................................................7

    F. Claims Procedure, Including Expenses, And Claims Received .......7

        1. No Objections and Only 33 Requests For Exclusion ...................7

        2. Settlement Checks .........................................................................8

IV. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED ..................................................................................................8

    A. The Settlement Should Be Finally Approved by the Court............8

        1. The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation.....10

        2. The Amount Offered In Settlement...............................................12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3. **The Extent of Discovery Completed** ...........................................14

4. **The Experience and Views of Class Counsel** ............................14

5. **The Reaction of Class Members To The Settlement**.................15

6. **The Rule 23(e)(2) considerations favor approval.**.....................16

B. **The Notice Program Complied with Rule 23 and Due Process**.....17

**VII. CONCLUSION** ..............................................................................................**18**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table of Authorities

**Cases**

*Arthur v. Sallie Mae, Inc.*,

    10-cv-0198-JLR (W.D. Wash.) ........................................................................13

*Boyd v. Bechtel Corp.,* 485 F. Supp.

    610 (N.D. Cal. 1979) .....................................................................................14

*Chavez v. PHC Corp.*,

    No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015)...............17

*Couser v. Comenity Bank*,

    125 F. Supp. 3d 1034 (S.D. Cal. 2015) .........................................................13, 15

*Ellis v. Naval Air Rework Facility*,

    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ....................9

*Facebook v. Dugid, y*,

    No. 19-511 (U.S. cert granted July 9, 2020) ........................................................11

*Girsh v. Jepson*,

    521 F.2d 153 (3d Cir. 1975) ...............................................................................9

*Golan v. FreeEats.com, Inc.*,

    930 F.3d 950 (8th Cir. 2019) ..............................................................................11

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) .......................................................................9, 10

*In re Bluetooth Headset Products Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) .......................................................................10, 15

*In re Diamond Foods, Inc.*,

    2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) .......................................8

*In re Ferrero Litig.*,

    2012 U.S. Dist. LEXIS 1517 (S.D. Cal. Jan. 23, 2012) .......................................10

*In re Global Crossing Sec. ERISA Litig.*,

225 F.R.D. 436 (E.D. Pa. 2000) .................................................................13

*In re Mego Fin. Corp. Sec. Litig.*,

213 F.3d 454 (9th Cir. 2000).................................................................13

*In re Mercury Interactive Corp.*, 618 F.3d 988(9th Cir. 2010) ...........................19

*In re Warner Communications*

*Sec. Litig.*, 618 F. Supp.735 (S.D. N.Y. 1985)....................................14

*In re Wireless Facilities, Inc.s*

*Sec. Litig. II*, 253F.R.D. 607 (S.D. Cal. 2008) .....................................14

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,

654 F.3d 935 (9th Cir. Cal. 2011) ......................................................10

*Linder v. Thrifty Oil Co.*,

23 Cal. 4th 429 (Cal. 2000) .........................................................13, 14

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,

671 F. Supp. 819 (D. Mass. 1987)...............................................9, 14, 15

*Makaron v. Enagic USA, Inc.*,

Case No. 2:15-cv-05145-DDP-E Dkt. No. 145....................................13

*Mullane v. Central Hanover Bank & Trust Co.*,

339 U.S. 306 (1950) ......................................................................17

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004) ...................................................10, 13

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,

688 F.2d 615 (9th Cir. 1982)........................................................8, 9, 12

*Phillips Petroleum Co. v. Shutts*,

472 U.S. 797 (1985) ......................................................................17

*Rodriguez v. West Publishing Corp.*,

563 F.3d 948 (9th Cir. 2009).................................................................9

*Rose v. Bank of Am. Corp.*,

No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ..........13

*Staton v. Boeing Co.,*

   327 F.3d 938 (9th Cir. 2003) ...................................................................9

*Steinfeld v. Discover Fin. Servs.,*

   2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ...................................15

*Stemple,*

   2016 U.S. Dist. LEXIS 157207 .............................................................15

*Torrisi v. Tucson Elec. Power Co.,*

   8 F.3d 1370 (9th Cir. 1993) ...................................................................9

*Wilson v. Airborne, Inc.,*

   2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ...............................18

**Statutes**

Fed. R. Civ. Proc. 23(e) ..........................................................................7, 8

Federal Rule of Civil Procedure 23(b)(3) ........................................ passim

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*................................1

**Other Authorities**

2 *Newberg on Class Actions*

   (4th Ed. & Supp. 2002)..........................................................................15

David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?,*

   54 Md. L. Rev. 1552 (1995) ...................................................................2

Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)........................................20

*Manual for Complex Lit.,* Fourth § 30.42 ................................................17

### MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff Terry Fabricant ("Plaintiff" or "Mr. Fabricant") requests final approval of this proposed class action settlement agreement (the "Settlement Agreement," Dkt. 18-1 Ex A) with Defendant AmeriSave Mortgage Corporation (the "Defendant" or "AmeriSave").

## I.   INTRODUCTION

This Settlement provides for significant relief for Class Members allegedly harmed by Defendant's telemarketing calling practices. The Settlement Agreement, reached after extensive adversarial proceedings and an all-day mediation session before Hon. George King (Ret.), provides for a significant financial benefit of a $6.25 million common fund, plus injunctive relief, to approximately 2.3 million Class Members who were called and/or texted by Defendant by an automatic telephone dialing system. Those Class Members who submit a valid claim will receive a pro rata share of the distributable settlement funds.[1] The settlement also provides substantial injunctive relief in this matter pursuant to Rule 23(b)(2), consisting of the implementing of a new manual click to dial platform that is likely not an Automated Telephone Dialing System ("ATDS"), as defined under the Telephone Consumer Protection Act 47 U.S.C. § 227(a)(1), under recent Ninth Circuit precedent. This meaningful policy change serves as additional injunctive relief that benefits both the Class Members and consumer privacy more generally.

The Notice Plan approved by the Court has been implemented successfully by the parties and the Court-approved Settlement Administrator, Postlethwaite & Netterville, APAC ("P&N" or "Settlement Administrator"). The Mail Notice was successfully delivered to approximately 98% of identified Class Members. The reaction of the Class has been very positive. There are no objections to the settlement. There are only 118 valid opt outs. As of August 31, 2020, P&N has

---

[1] Defined terms are used as defined in the Settlement Agreement.

received 220.925 claims. Declaration of Bradley D. Madden ("Madden Decl.") at ¶ 19. This translates to a participation rate of 9.3%, which is well above average, and in line with Class Counsels' expectations.

The deadline to submit claims is September 18, 2020. *Id.* Based on the current participation rate, participating Class Members can be expected to each receive approximately $15.46 based on the current claims made, but this will be reduced as more claims are processed.[2] The number of claims submitted may increase as P&N reviews any additional claims that are submitted in the coming weeks. *Id.* In addition to providing Settlement Class Members with monetary relief, the Settlement incentivizes Defendant and other businesses to comply with the TCPA, which benefits the Settlement Class Members, consumers in general, and compliant competitive businesses. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance."). The Settlement is abundantly fair and reasonable and should be finally approved.

## II.    PROCEDURAL HISTORY

Plaintiff moved for preliminary approval of the Settlement on February 7, 2020 (Dkt. No. 18). After briefing on an intervention motion and objection from counsel in related litigation, the Court granted preliminary approval on May 21, 2020 and issued a schedule of outstanding dates and deadlines (Dkt. No. 46). Plaintiff contemporaneously files his motion for attorneys' fees and costs and for service awards. Plaintiff separately submits this motion for final approval.

///

---

[2] P&N projects there could be as many as 300,000 claims, which would be a participation rate of 12.8%. If that occurs, the average claim will receive $11.38.

### III.   SETTLEMENT

In an earnest attempt to settle the action and avoid the risks inherent in proceeding to trial, the parties engaged in a mediation with former Central District Chief Judge George H. King (ret.).  The Settlement Agreement resulted from extensive arm's length negotiations and a private mediation on January 8, 2020 and two subsequent mediation sessions, ultimately resulting in a mediator's proposal which was accepted by the Parties. The parties also conducted all necessary discovery, including discovery pertaining to the issues of ATDS, prior express consent, class scope, damages, financial viability, and class certification issues.

Despite strong views about both merits and certification issues from both sides, the parties engaged in settlement negotiations, and during the mediation sessions, were able to reach an understanding with the assistance of Judge King, the terms of which are memorialized in the Agreement.  As explained below, all of the factors that courts consider weigh in favor final approval of the proposed Settlement. The relief provided by the settlement is significant, particularly given the risk and expense of continued litigation. The settlement ensures that class members are compensated without delay and eliminates the risk of loss at trial or on appeal.  The parties are fully apprised of the strengths and weaknesses of the claims and defenses. Class Counsel have successfully litigated many TCPA cases and fully support the settlement.  And that no class members objected further supports final approval of the settlement.  Plaintiff requests that the Court finally approve the settlement as fair, reasonable and adequate.

### A.   The Fairness Hearing

At the Fairness Hearing scheduled for November 20, 2020, the Court will decide whether to finally approve the Settlement and whether to grant Class Counsel's request for attorneys' fees, actual litigation costs, and service awards to the Class Representative.

///

**B.    Attorneys' Fees, Costs Application, And Service Awards**

Class Counsel seek $1,250,000 in attorneys' fees (twenty percent of the Common Fund); litigation costs currently totaling $30,061.51; and a service award in the amount of $5,000 to the Class Representative to be distributed separately from the Class Recovery.

**C.    Class Action Settlement Terms**

The significant terms of the Settlement are as follows:

**1.    The Class**

The "Class" had been previously certified by this Court (Dkt. No. 46) and is defined the same in the Agreement as follows:

> *"All persons or entities within the United States who received on their cellular telephones communications placed by AMERISAVE using its CCT dialer and/or that were placed to a number on the National Do Not Call list or AMERISAVE's Internal Do Not Call list between April 1, 2018 and December 31, 2019"*

The Class Period is from April 1, 2018 through December 31, 2019. (*Id.*) The Class consisted of 2,375,245 Class Members. Madden Decl. at ¶ 5.

**2.    Class Recovery**

The Settlement provides for a significant financial benefit of a $6.25 million Common Fund, which will be distributed on a pro rata basis (after the deduction of Class Counsels' fees and costs, administration expenses, and the incentive award) to the those members of the approximately 2.3 million Class Members who were called by Defendant by an alleged ATDS who submitted a valid and timely claim. The total *estimated* distributable fund going to Class Members is $3,414,938.49. Friedman Decl. ¶ 24. As of August 28, 2020, P&N has received 220,925 claims. Madden Decl. at ¶ 19. Based on these numbers, it is presently estimated that each

Class Member that submits a valid claim will receive approximately $15.46. This number is anticipated to go down over the next few weeks as the claims period has not ended yet, and could go down to $11.38 if the claims rate rises up to 300,000 claims (a higher than typical 12.8% rate)   P&N will send the settlement checks via U.S. mail and/or direct deposit after receiving approval from counsel to the Parties that judgment has become final.

Class Members shall be advised that the checks must be negotiated within one hundred and eighty (180) days, and the Settlement Administration shall mail or e-mail a reminder to cash the check on the 30th and 90th day following the mailing of the Settlement Payments. Settlement Agreement at § 4.1. After the 180-day period for approved Class Members to cash their check has run, the Settlement Administration shall stop payment on all outstanding checks, and any residual amounts left uncashed shall be distributed to cy pres recipient Electronic Privacy Information Center (EPIC). The Class Recovery shall not revert to Defendant.

In addition, Defendant is agreeing to change its dialing platform, including both calls and text messages, to a manual click to dial platform (such as LiveVox HCI, which has been held by numerous courts around the country to not have the capacity to autodial, and therefore, is likely not an ATDS). Such systems have been held by numerous courts not to be an ATDS under the TCPA due to their high level of human intervention, lack of capacity to autodial, and manual click to dial functionality. From a consumer protection standpoint, using such systems will reduce the volume of automated calls, and therefore protects privacy interests.

## V.    ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

### A.    CAFA Notice

Defendant mailed CAFA notice on April 22, 2020, in compliance with 28 U.S.C. § 1715(b). Madden Decl. ¶ 16.

### B.    Class Notice

P&N complied with the notice procedure set forth in the Preliminary Approval

Order.  Class Counsel's experts ran a cell phone scrub on the call records produced in discovery in order to determine the number of unique cell phone numbers at issue in the Class.  P&N then determined from this data, using reverse lookups, the identifies of class members, and identified the number of unique class members as 2,375,245.  P&N was able to obtain mailing addresses for 2,327,630 Class Members, i.e. 98% of the Class.  *Id.* at ¶¶ 5-8, 15.

Thereafter, P&N coordinated and caused Postcard Notice to be mailed via First-Class Mail to Class Members for whom a mailing address was obtained through the reverse lookup process.  *Id.* at ¶ 10.  Prior to mailing notice, P&N updated the Class Member contact information using the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Class Members before mailing the postcard notice.  *Id.* at ¶ 11.  P&N successfully executed Postcard Notice mailings to 95% of Class Members and supplemental mailings to 3% of Class Members whose initial Postcard Notices were not deliverable but were otherwise able to be located.  *Id.* at ¶ 15.  In all, 2,327,630 Class Members were mailed or e-mailed a Notice which was not returned as undeliverable, representing 98% of total Class Members. *Id.*.

## C.    Digital Notice

To provide notice to the Class Members for whom an email address or mailing address could either not be determined or who were unable to be contacted at the located address, P&N executed audience-specific media targeted campaigns on Facebook and Google for a total of 100 million impressions.  *Id.* at ¶¶ 10.

## D.    Detailed Notice Posted on The Settlement Website

P&N created a Settlement Website where it posted the detailed and full notice in a question and answer format, which explained the case, the proposed settlement and each Settlement Class Member's options regarding the proposed settlement. *See* Madden Decl., ¶ 12.  Among other things, the website contains the Settlement

Agreement, Preliminary Approval Order, Motion for Attorneys' Fees Costs and Service Awards, detailed Class Notice, Mail Notice, Claim Form and online Opt-Out Form. *Id.*. As of August 28, 2020, there have been 270,799 visits to the settlement website. *Id.*

### E.    Toll-Free Information Line

P&N also established a case-specific toll-free number for Class Members to call to obtain information regarding the Settlement, and leave inquiry messages. *Id.* at ¶ 13. To date, the toll-free number has received 14,782 calls. *Id*. P&N will continue to maintain the toll-free number throughout the Settlement administration process. *Id*. P&N also established an email address as another option for Class Members to contact to address specific questions. *Id.* at ¶ 14.

### F.    Claims Procedure, Including Expenses, And Claims Received

The procedure for submitting a claim was made as easy as possible – a claim form could be submitted online via the Settlement Website or sent by U.S. Mail. *See* Madden Decl. at ¶ 19. All that was required was the Class Member provide their claim number or phone number, to confirm class membership, as well as mailing address or direct deposit information for purposes of sending payment. P&N has received 220,925 claim forms from Class Members. *Id*. at ¶ 19. This equates to a claims rate of approximately 9.3%.[3]

### 1.    <u>No Objections and Only 118 Requests For Exclusion</u>

Class Members were permitted to opt-out[4] or to submit an objection. *See* Madden Decl., ¶¶ 20, Ex 7. The deadline to submit a request for exclusion or object is September 30, 2020. As of August 28, 2020, P&N has received only 118 valid requests for exclusion, and there are no objections to the Settlement. *Id*. The fact

---

[3] The claims period runs until September 18, 2020, and so the number of claims is expected to rise between now and then. P&N predicts it could rise as much as up to 300,000 claims, a 12.8% take rate.

[4] Under Fed. R. Civ. P. 23(e)(4), the Court may afford an additional opportunity for Class Members to request exclusion from the Settlement.

that there are no objections and only 118 timely exclusion requests out of 2.3 million Class Members highly supports the adequacy of the proposed Settlement[5]. *In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.")

## 2. <u>Settlement Checks</u>

Each Class Member that submitted a valid claim will receive an estimated approximately \$11.38-\$15.46, with the total amount paid on valid claims being estimated at approximately \$3,414,938.49. The Class Recovery is separate from any amount to be paid for attorneys' fees and costs, incentive award, and settlement administration. P&N will send the settlement checks via U.S. mail or direct electronic deposit if the Class member elected to receive such payment, after receiving approval from counsel to the Parties and funding to be received.

## VI. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A.    The Settlement Should Be Finally Approved by the Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate,

---

[5] Comparing Class Members who submitted Claims to those who requested exclusion, there are .005% requests for exclusions as compared to the number of claims, demonstrating the lack of resistance to the settlement by Class Members.

reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass.

1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

In addition, under the recent amendments to Rule 23, courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

All of these factors support a finding that the settlement is fair, reasonable, and adequate. Moreover, the Settlement was reached with the assistance of experienced mediator, Hon. Jay Gandhi (Ret.). *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). Finally, Class Counsel and the Plaintiff agree that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Friedman Decl. at ¶¶ 4 & 12.

### 1.    The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff believes he has a strong case against Defendant, but recognizes the significant risks in litigating it to trial.  Defendant AmeriSave has vigorously contested the claims asserted by Plaintiff in this Litigation from multiple angles, which are described in detail in the declaration of Mr. Friedman.  Friedman Decl. ¶¶ 33-47.  First, Defendant contested that its dialing system was an ATDS under the

TCPA, which if accurate, would have resulted in no liability under the § (b) claim, and left Plaintiff with a much narrower class owed much less money out of the gates under the remaining § (c) claim.  This threat was real, as both the Third Circuit, Seventh Circuit and Eleventh Circuit have issued decisions supporting Defendant's view.  Moreover, the US Supreme Court next term has agreed to hear argument to decide this issue, in a manner that could have a direct impact on the results of this litigation.  See *Facebook v. Duguid*, No. 19-511 (U.S. *cert granted* July 9, 2020)

Second, Defendant contended that it had prior express written consent to contact class members, which by extension would have also created an established business relationship.  If accurate, this would have undermined the entire case, and satisfied Defendant's affirmative defense.  On a similar note, Defendant contended that it was purchasing valid leads from reputable lead vendors who obtained consumer information and consent directly from Class Members.  Defendant thus believed that it had a complete defense to liability.  However, even if that were not the case, Defendant also pointed to its compliant opt in process as a certification defense under the predominance prong of Rule 23, as such circumstances created individualized issues of consent.  Defendant also contested damages, and pointed to *Golan v. FreeEats.com, Inc*., 930 F.3d 950 (8th Cir. 2019) for the proposition that reducing TCPA class damages to $10 per call is appropriate to prevent a shockingly large penalty that violated the due process rights of a company when aggregated. Additionally, Defendant argued that the TCPA was unconstitutional under the First Amendment and reserved the right to request outright dismissal of the case if the pending Supreme Court decision on this very issue supports such a position. Defendant also shared financial information with Plaintiff during mediation and sufficiently demonstrated that it would not be able to withstand a class judgement, even in an amount similar to the *Golan* case.

While both sides strongly believed in the merits of their respective cases, there are clearly numerous palpable risks to both sides in continuing the Litigation.

If the Litigation were to continue, challenges would likely be made to any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation. Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment. The law is fluid in many of these areas, which means that inevitably there would be appeals that would drag out for years. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seek its Final Approval. *See Friedman Decl*, ¶¶ 33-47.

Considering the potential risks and expenses associated with continued prosecution of the lawsuit, the probability of appeals by both sides, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. *See Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . .")

## 2. **The Amount Offered In Settlement**

As set forth above, AmeriSave has agreed to pay $6,250,000 to fund the settlement, which includes notice and claims administration costs, creating and maintaining a Settlement Website and toll free number, providing CAFA notice, an Incentive Award to Plaintiff Terry Fabricant in the amount of $5,000 and attorneys' fees in the amount of $1,250,000 and reimbursement of litigation costs of up to $50,000 *See Friedman Decl*, ¶12. $3,414,938.49 of this Common Fund is estimated to be distributed to Class Members. P&N has received 220,925 valid claims, thus the Class Members are expected to receive approximately $11.38-$15.46[6] each on

---

[6] This number is likely to decrease if the number of claims increases significantly over the next few weeks.

average, based on the current number of claims.  Friedman Decl. ¶ 24.

This payment is a significant recovery for Class Members.  The relief afforded to Settlement Class Members here is in line with the relief afforded in many TCPA class action settlements.  *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (approximately $13.75 per claimant); *Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.) (Class members were to receive between $20 and $40 dollars per claim); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (individual recovery of $20 to $40 per claimant); *Makaron v Enagic USA, Inc.*, Case No. 2:15-cv-05145-DDP-E Dkt. No. 145 (class members who made claims recovered $12 each).  It is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery).

As the *Linder* Court explained, "… it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce several salutary by-products, including a therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to the judicial process of the burden of multiple litigation involving identical claims." *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations

omitted).  Further, Plaintiff negotiated an injunctive component of the Settlement which results in Defendant no longer using an ATDS to place calls or send texts, a further benefit to Class Members and consumer privacy generally.

### 3.    The Extent of Discovery Completed

The parties have actively litigated the action and the Court and engaged in full and complete discovery of the relevant issues involved in this litigation, including relating to the ATDS issue, consent, and the size and scope of the Class.  Class Counsel are satisfied that the information provided about the number of cell phones called is accurate, given that it involved a complete production of all call/text data to Plaintiff's experts, who used reliable and accepted methods that have numerously been approved by courts to scrub the lists for cell phone numbers to determine class membership.  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

As detailed in the motion for preliminary settlement approval (Dkt. No. 18), the parties engaged conducted considerable discovery prior to counsel for the parties attending an all-day private mediation before the Hon. George H. King (Ret.).  Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications*, 618 F. Supp. at 745.

### 4.    The Experience and Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel.  *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at

18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Lit.,* Fourth § 30.42.

It is the considered judgment of Class Counsel experienced in TCPA class action litigation that this settlement is a fair, reasonable and an adequate settlement benefiting Settlement Class Members nationwide. Class Counsel are experienced consumer class action lawyers, particularly as it concerns TCPA class actions. This Settlement was negotiated without collusion by experienced and capable Class Counsel who recommend its approval Friedman Decl., ¶¶ 8 & 47. Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this TCPA class action, and unequivocally assert that the proposed Settlement should receive final approval.

## 5.    The Reaction of Class Members To The Settlement

To date, there are no objections and only 118 timely and valid requests for exclusion (Madden Decl., ¶¶ 20-21), which is important in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement here. *See Steinfeld v. Discover Fin. Servs*., 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the [TCPA] Settlement."); *Stemple*, 2016 U.S. Dist. LEXIS 157207 at *7-8 (finding the lack of objections supported approval of the TCPA settlement). While there could yet be objections, there has yet been little resistance to settlement.

///

### 6.  The Rule 23(e)(2) considerations favor approval.

The considerations outlined in the newly revised Rule 23(e)(2) also support final approval of the settlement.  The first consideration is the adequacy of Plaintiff's and his counsel's representation of the Class. The Court already ruled that Plaintiff and his counsel that competently and adequately represented the Class in the Order granting preliminary approval of the Settlement.  Dkts. No. 46.  Class Counsel, who have a great deal of experience litigating and settling TCPA class action cases, also wholeheartedly support the settlement.   This consideration therefore supports approval.

The second consideration also supports approval because the settlement was negotiated at arms' length.  This case involved hard-fought nature of this litigation, and the parties approached settlement discussions in the same way.  None of the "red flags" of potential collusion the Ninth Circuit has identified exist in this case.  *See In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011) (noting that plaintiffs' counsel may have allowed pursuit of their own self-interest to infect settlement negotiations when they receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree that any fees not awarded will revert to defendants rather than be added to the class fund).  In fact, the fees being requested by Class Counsel are well below the Ninth Circuit benchmark for common fund settlements.

The third consideration — the adequacy of the relief — also supports Settlement.  As discussed above, the estimated $11.38-$15.46 per Class Members claim is more than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and appeal. The distribution plan ensures that Settlement Class Members will be treated equitably relative to each other. The Class Recovery will be distributed to all Class Members who filed valid claims.  Further, as outlined above, the injunctive relief obtained by Plaintiff provides substantial benefits to the

Class as well.

Finally, Plaintiff addresses the reasonableness of the requested attorneys' fees in the contemporaneous motion.

### B. The Notice Program Complied with Rule 23 and Due Process

The notice program approved by the Court and implemented by P&N satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When the class is certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The court-approved notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and described "the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice was written in plain English and included the dates for class members to object and the final approval hearing. *See Chavez v. PHC Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

P&N mailed the Court-approved Notice to 2,375,245 (98%) Class members. Madden Decl. ¶¶ 15. In total, 2,327,630 Mail Notices were successfully delivered, representing 98% of the Settlement Class Members. *Id*. P&N also placed the Court-

approved Digital Notice into audience-specific media targeted campaigns on Facebook and Google for a total of 100 million impressions. *Id.* ¶ 10. These numbers satisfy due process. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also, Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

P&N also established a settlement website with detailed information about the settlement. *Id.* ¶ 12. Located at www.AmeriSaveTCPAclaims.com, the website had 277,799 visits hits as of August 28, 2020. *Id.* ¶ 12. The website lists important dates and class members' rights and options, includes frequently asked questions and key documents from the case like the settlement agreement and motion for attorneys' fees, and allowed class members to submit an online claim. The website (and notices) also provided a toll-free number that class members could call to obtain information about the Settlement and leave inquiry messages. *Id..* The toll-free number has received more than 14,783 calls. *Id.* ¶ 13.

## VII. CONCLUSION

In sum, the parties have reached this Settlement following extensive arms' length negotiations, with the assistance of an experienced mediator. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed class action settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorneys' Fees and Costs and Service Awards;
- Enter the proposed order of Final Approval of Class Action Settlement and Judgment; and,

- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Date: August 31, 2020                    **The Law Offices of Todd M. Friedman, PC**

                                        By:  _/s/ Todd M. Friedman_
                                              Todd M. Friedman
                                              *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 31st day of August, 2020, with:

United States District Court CM/ECF system

Notification sent electronically on this 31st day of August, 2020, to:

Honorable Judge Andre Birotte' Jr.
United States District Court
Central District of California

Becca J. Wahlquist, Esq.
SNELL & WILMER, LLP


<u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.