Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

### UNITED STATE DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

TERRY FABRICANT, individually
and on behalf of all others similarly
situated,

Plaintiff,

vs.

AMERISAVE MORTGAGE
CORPORATION, and DOES 1
through 10, inclusive, and each of
them,

Defendant.

Case No. 2:19-cv-04659-AB-AS

**CLASS ACTION**

**PLAINTIFF'S NOTICE OF
MOTION & MOTION FOR
ATTORNEYS' FEES AND COSTS
AND INCENTIVE AWARD**

Assigned to the Honorable Andre'
Birotte, Jr.

**DATE:**         NOVEMBER 20, 2020
**TIME:**         10:00 A.M.
**COURTROOM:** 7D

[Filed and Served Concurrently with
Declaration of Todd M. Friedman;
Declaration of Terry Fabricant
[Proposed] Order]

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, November 20, 2020 at 10:00 a.m., before the United States District Court, Central District of California, Courtroom 7D, 350 W. 1st Street, Los Angeles, California 90012 (7th Floor) plaintiff Terry Fabricant ("Plaintiff") will move this Court for an order granting attorneys' fees and costs and an incentive award for Plaintiff pursuant to Final Approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: August 31, 2020

The Law Offices of Todd M. Friedman, PC

By:  _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

1

## <u>TABLE OF CONTENTS</u>

2

I. INTRODUCTION ..................................................................................1

3

II. STATEMENT OF FACTS..................................................................3

4

A. **Factual Background** ..........................................................3

5

B. **Proceedings to Date** ........................................................4

6

7

III. ARGUMENT ....................................................................................5

8

A. The Requested Fee Award Is Fair, Reasonable And Justified ..............6

9

1. The requested fees resulted from arm's length negotiations............6

10

2. The requested fees are reasonable, fair, and justified  under the percentage-of-the-fund method...................................8

11

12

a. Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases.......................9

13

14

b. The risks of litigation support the requested fees ...................10

15

c. The skill required and quality of work performed support the requested fees.......................................................12

16

17

d. Class Counsels' undertaking of this Action on a contingency-fee basis supports the requested fees .................................13

18

19

3. The requested fee is reasonable, fair, and justified under the lodestar method..............................................................14

20

21

a. Class Counsels' lodestar is reasonable.....................................15

22

b. Class Counsels' hourly rates are reasonable............................16

23

24

B. The Requested Costs Are Fair And Reasonable..................................18

25

IV. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE

26

AWARD ..............................................................................................19

27

V. CONCLUSION..................................................................................20

28

1
2
## Table of Authorities

3  **Cases**

4  *Arthur v. Sallie Mae, Inc.*,
5      10-cv-0198-JLR (W.D. Wash.) ............................................................10

6  *Bellinghausen v. Tractor Supply Co.*,
7      306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) .......................................19

8  *Blum v. Stevenson*,
9      465 U.S. 886 (1994) ..........................................................................18

10  *Couser v. Comenity Bank*,
11      125 F. Supp. 3d 1034 (S.D. Cal. 2015) ............................................10

12  *Davis v. City and County of San Francisco*,
13      976 F.3d 1536 (9th Cir. 1992) ...........................................................18

14  *Dennis v. Kellogg Co.*,
15      2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) .....................................7

16  *Di Giacomo v. Plains All Am. Pipeline*,
17      2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) .................15

18  *Fischel v. Equit. Life Assurance Soc'y*,
19      307 F.3d 997 (9th Cir. 2002) ............................................................15

20  *Fox v. Vice*,
21      563 U.S. 826 (2011) ............................................................................3

22  *Glass v. UBS Fin. Servs.*,
23      2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .............14, 15

24  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............... passim

25  *Hartless v. Clorox Co.*,
26      273 F.R.D. 630 (S.D. Cal. 2011) .......................................................17

27  *Hensley v. Eckerhart*,
28

461 U.S. 424 (1983) ........................................................................9

*In re Activision Sec. Litig.*,

723 F. Supp. 1373 (N.D. Cal. 1998)......................................8

*In re Beverly Hills Fire Litigation*,

639 F. Supp. 915 (E.D. Ky. 1986).......................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,

654 F.3d 935 (9th Cir. 2011) ...............................................6

*In re Global Crossing Sec. ERISA Litig.*,

225 F.R.D. 436 (E.D. Pa. 2000) .........................................10

*In re Hyundai*, 926 F.3d 539 (9th Cir. 2019) ..............................3

*In re Immune Response Sec. Litig.*,

497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................18

*In re Media Vision Tech. Sec. Litig.*,

913 F. Supp. 1362 (N.D. Cal. 1996)....................................18

*In re Mego Fin. Corp. Sec. Litig.*,

213 F.3d 454 (9th Cir. 2000) .............................................10

*In re Mercury Interactive Corp.*,

618 F.3d 988 (9th Cir. 2010) ...............................................6

*In re Omnivision Techs.*,

559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................... passim

*In re Online DVD-Rental Antitrust Litigation*,

779 F.3d 934 (9th Cir. Feb. 27, 2015)..............................2, 19

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act*

*(FACTA) Litigation*,

295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ..........................19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,

19 F.3d 1291 (9th Cir. 1994)..............................................13

*Kelly v. Wengler*,

822 F.3d 1085 (9th Cir. 2016)................................................3

*Kerr v. Screen Extras Guild, Inc.,*

526 F.2d 67 (9th Cir. 1975) .................................................15

*Lundell v. Dell, Inc.,*

CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ................7

*Makaron v Enagic USA, Inc.,*

Case No. 2:15-cv-05145-DDP-E Dkt. No. 145....................................10

*Milliron v. T-Mobile USA, Inc.,*

2009 WL 3345762 (D.N.J.  Sept. 14, 2009)..........................................7

*Mills v. Electric Auto-Lite Co.,*

396 U.S. 375 (1970) ...........................................................18

*Nat'l Rural Tele. Coop v. DIRECTV, Inc.,*

221 F.R.D 523 (C.D. Cal. 2004) .............................................10

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,*

688 F.2d 615 (9th Cir. 1982) ...................................................7

*POM Wonderful, LLC v. Purely Juice, Inc.,*

2008 WL 4351842 (C.D. Cal 2008) ......................................17

*Rose v. Bank of Am. Corp.,*

No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .........10

*Sandoval v. Tharaldson Emp. Mgmt., Inc.,*

2010 WL 2486346 (C.D. Cal. June 15, 2010)........................................7

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ..................................18

*Staton v. Boeing Co.,*

327 F.3d 938 (9th Cir. 2003) .................................................6

*Vizcaino v. Microsoft Corp.,*

290 F.3d 1043 (9th Cir. 2002)........................................ passim

1

**Statutes**

2

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.............................3, 4

3

**Other Authorities**

4

2 McLaughlin on Class Actions (8th ed.) ...................................................................8

5

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) ...............10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff moves the Court for an award of attorneys' fees, costs and incentive payment as part of this preliminarily approved class action settlement (see Dkt. No. 46) between plaintiff Terry Fabricant ("Plaintiff") and defendant AmeriSave Mortgage Corporation (hereinafter referred to as "Defendant" or "AmeriSave").[1] Defendant does not oppose this Motion.  The Settlement Agreement provides for a substantial financial benefit of $6,250,000 ("Settlement Fund") to the approximately 2,375,245 Settlement Class Members.  Dkt. No. 18-1 Ex. A Settlement Agreement ("SA" or "Agr.");[2] Declaration of Todd M. Friedman In Support of Motion for Fees ("Friedman Decl") at ¶ 4.  The $6,250,000 Settlement Fund to be paid by Defendant is an all-in, non-reversionary payment.  After the Settlement Costs are deducted from the Settlement Fund, including the attorney's fees and costs, claims administration costs and incentive award, the amounts remaining will be available to pay all Approved Claims.  *Id*. at ¶ 5.  Each Class Member who submits a valid claim form will receive a pro-rata award from the Settlement Fund.  The agreement also provides that Defendant will pay all of the following: (1) all settlement administration costs, estimated at $1,550,000; (2) attorney's fees in an amount not to exceed 20% of the Settlement Fund ($1,250,000); (3) litigation costs up to $50,000 (currently $30,061.50); and an incentive award for Plaintiff of up to $5,000. *Id* at 5.  These fees and expenses will be paid from the $6,250,000 Settlement Fund.

In addition to the settlement fund of $6,250,000, Defendant shall also provide injunctive relief by agreeing to revise its dialing platform to a manual click to dial platform, which has been held by numerous courts to not meet the standards of being an ATDS under the TCPA.

---

[1] Collectively referred to as the "Parties."

[2] Defined terms are intended to have their meaning in the Settlement Agreement.

On May 21, 2020, the Court granted preliminary approval of the Settlement and its terms enumerated above, observing, that the Settlement appeared reasonable and disclosed no grounds to doubt its fairness.  Dkt. No. 46.  The Court preliminarily approved the fairness of the anticipated cost of notice, and the approved fees and costs, noting that the fees requested were below the 25% benchmark for common fund settlements in the Ninth Circuit.  See Dkt. No. 46 at pg. 4 citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement."  Fed. R. Civ. P. 23.  As noted by Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which was approved by this Court (Dkt. No. 46), the Settlement Agreement in this action resulted from extensive arm's length negotiations, including a full-day mediation session before Hon. Judge George King (Ret.).  Friedman Decl ¶ 6.  The arm's length negotiations, especially those before Judge King, serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award sought by this Motion.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach.  The $1,250,000 in attorneys' fees sought equates to 20% of the $6,250,000 Settlement Fund, which is well below the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards in common fund cases.  Additionally, Class Counsel have incurred a combined total of 1,047.7 hours litigating this action for a combined lodestar of $706,527.50.  Thus the fee request represents a modest multiplier of 1.77.  As the Ninth Circuit has held, it is common for complex class action litigation to result in a fee award that represents a modest

multiplier in the 2-4 range. *In re Hyundai*, 926 F.3d 539, 568-572 (9th Cir. 2019); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (upholding a lodestar multiplier of 3.65) *Kelly v. Wengler*, 822 F.3d 1085, 1093, 1105 (9th Cir. 2016) (affirming lodestar multipliers of 2.0 and 1.3); *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Through this fee brief, which is unopposed by Defendant, Plaintiff seeks Court approval of the agreed-upon costs and fees as follows: (1) all settlement administration costs, estimated to be $1,550,000, to be paid to the Claims Administrator;[3] (2) attorneys' fees in the amount of $1,250,000; (3) litigation costs in an amount of $30,061.51; and (4) an incentive award for Plaintiff of $5,000. As more thoroughly stated herein and as detailed in the supporting declaration filed herewith, these sums are fair and reasonable as they resulted from extensive arm's length negotiations and are further supported by the percentage-of-the-fund and loadstar methodologies. Friedman Decl. ¶¶ 8-42.

## II.   STATEMENT OF FACTS
### A.   Factual Background

AmeriSave is a direct mortgage lender operating in most of the United States. During the Class Period, AmeriSave called and/or sent text messages to 2,343,247 mobile phones in connection with its marketing campaigns. *See Friedman Decl.*, ¶ 15. Plaintiff's operative Complaint alleges AmeriSave violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") by calling and/or sending text messages to the cellular telephones without obtaining "prior express consent," using an "automatic telephone dialing system." Plaintiff contends he and the Class are entitled to statutory damages pursuant to the TCPA.

AmeriSave has vigorously denied and continues to deny that it violated sections b or c the TCPA in placing calls and/or texts to numbers for which it

---

[3] Plaintiff will supplement this filing at the final approval stage with a declaration from the claims administrator outlining actual administration costs.

believes it had all requisite prior consent for such communications, and denies all charges of wrongdoing or liability asserted against it in the Action

**B.     Proceedings to Date**

Plaintiff filed the initial class action complaint ("Complaint") on May 30, 2019.  In the Complaint, Plaintiff alleged causes of action for unintentional and intentional violations of the TCPA.  Based on those allegations, Plaintiff sought $500 per violation and $1,500 for each intentional violation, as well as injunctive relief. Plaintiff's claims were brought on behalf of a class of individuals who allegedly received text messages and/or phone calls to their mobile phones from AmeriSave without consent using an automatic telephone dialing system or artificial or prerecorded voice technology. (Dkt. No. 1).  Plaintiff subsequently amended his complaint on August 8, 2019. (Dkt. No. 10).  AmeriSave filed is Answer on August 22, 2019 (Dkt. No. 11).  In its Answer, AmeriSave admitted to placing more than one call to Plaintiff.  Given that Plaintiff's phone number is on the Federal Do Not Call List, and that AmeriSave confirmed he had received more than one solicitation communication, Plaintiff planned to amend the Complaint again to add claims under § 227(c) of the TCPA for do not call list violations.

Prior to mediating the case, Plaintiff engaged in extensive discovery with Defendant, including an exchange of information and documents regarding the dialing system used, information, data and documents regarding the source of leads data, including both the number of leads acquired from each vendor, and the identities of the vendors and websites allegedly used to gather prior express consent and establish an existing business relationship.  Plaintiff also requested and was provided the full outbound dial list, which was then used by experts, overseen and paid for by Class Counsel to scrub the list for cellular phone numbers, and determine the number of unique class members.  This data was later used by the claims administrator to identify members of the Class with 98% accuracy.  Madden Decl. ¶ 15.

The Parties attended mediation with the Hon. George H. King, Ret. of Jams. on January 8, 2020 and committed to trying to resolve both §§ 227(b) and 227(c) claims on behalf of the class.  The Parties did not resolve the case at the mediation on January 8, 2020, but subsequently resolved the matter shortly thereafter via Judge King over the course of several follow up sessions.  Through his guidance, this Settlement was reached.  *See Friedman Decl*, ¶ 6.

Following mediation, Plaintiff filed a motion for preliminary approval.  On February 28, 2020. Intervenor Hans Tiefenthaler and his counsel filed a Motion to Intervene, which my office opposed for a number of reasons.  Mr. Tiefenthaler's action was pending in Georgia, involved overlapping claims, and was filed after this action.  Plaintiff and Class Counsel vigorously defended the settlement and opposed intervention.  Substantial motion practice resulted in the intervenors withdrawing their papers, and requesting that the filings all be sealed.  See Docket entries 28, 28-1, 28-2, 28-3, 36, 36-1, 37, 37-1, 37-2, 37-3, 37-4, 37-5, 37-6, 37-7, 37-8, 37-9, 37-10, 39, 39-1, 40, 40-1, 40-2, 40-3, and 40-4.

On May 21, 2020, the Court granted preliminary approval of the settlement, finding the terms were fair and reasonable to class members, and that the requested fees and costs appeared fair under the appropriate Ninth Circuit benchmarks.  Dkt. No. 46.  Since that time, only 118 Class Members have opted out of the settlement, and zero have objected to the settlement terms, the incentive award, or the proposed fees. Friedman Decl. ¶ 38.  As set forth below, Plaintiff respectfully requests that the Court approve the Settlement, and the application for fees and costs and Plaintiff's incentive award.

## III.   ARGUMENT

Class Counsel respectfully assert that (A) the requested fee award of $1,250,000 is fair, reasonable, and justified; (B) the payment of $30,061.51 in costs is fair and reasonable; and (C) the proposed incentive payment to Plaintiff of $5,000 is fair as well.  Friedman Decl., ¶ 4.

**A.** <u>**The Requested Fee Award Is Fair, Reasonable And Justified**</u>

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h) (emphasis added). As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). In common fund cases, Courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or, (2) lodestar plus a risk multiplier. *Staton*, 327 F.3d at 967-68. *See also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Class Counsel maintain the request for attorneys' fees is reasonable based solely upon the arm's length formal negotiations that serve as independent confirmation of the fairness of the settlement, including attorneys' fees. *See Hanlon*, 150 F.3d at 1029. However, the requested fees are also fully supported under the percentage-of-the-fund and lodestar approach, which Class Counsel offer as an additional and optional means of cross-checking the requested fees.

**1.** **The requested fees resulted from arm's length negotiations**

While attorneys' fee provisions included in class action settlements are subject to the determination of whether the provision is fundamentally fair, adequate and reasonable, the Ninth Circuit has opined that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)) (emphasis added). *See also Lundell v. Dell, Inc*., CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).

In *Hanlon*, the Ninth Circuit went on to state that where settlement terms, including attorneys' fees, are reached through formal mediation, the Court may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon*, 150 F.3d at 1029. *See also Milliron v. T-Mobile USA, Inc*., 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Sandoval v. Tharaldson Emp. Mgmt., Inc*., 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Dennis v. Kellogg Co*., 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," which helped to establish that the proposed settlement was noncollusive). *See also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion").

Here and as previously stated in Plaintiff's Motion For Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which this Court has approved (Dkt. No. 46), the Settlement Agreement resulted from extensive arm's length negotiations. Friedman Decl. ¶¶ 6. More specifically, the Parties attended a full-day mediation session with Judge King, where the parties made progress towards a class settlement, and ultimately agreed to a settlement with the assistance of Judge King after two subsequent remote mediation sessions. *Id.* The parties had also conducted extensive informal and formal discovery surrounding Plaintiff's

claims and Defendant's defenses.  Friedman Decl., ¶¶ 6 and 19-22.  Under these circumstances, the Court may give deference to the mediation proceedings and the judgment of the Parties regarding the reasonableness of fees.  However, the requested fee is wholly supported by the both the percentage-of-the-fund and lodestar methods, which the Court may employ as a means of assessing the reasonableness of the requested fee.

### 2.    The requested fees are reasonable, fair, and justified  under the percentage-of-the-fund method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.  *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047, 1048-1050 (9th Cir. 2002).  The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount.  *Vizcaino*, 290 F.3d at 1047.  "However, in most common fund cases, the award exceeds that [25%] benchmark."  *In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig*., 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)).  Both the *Omnivision* and *Activision* Courts concluded that "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%."  *Omnivision*, 559 F. Supp. 2d at 1048.

Class Counsel's request for attorneys' fees in the amount of $1,250,000 equates to *only 20%* of the $1,250,000 Settlement Fund, which falls well below the Ninth Circuit's benchmark.  In most cases, the benchmark 25% in attorneys' fees are most often paid from the fund, thereby reducing class members' recovery, as is this case.  Here, the fee request is fully supported by the factors enunciated in *Vizcaino* including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards

made in similar cases.   As Class Counsel described in the contemporaneous declarations, there was a great deal of risk and skill involved in achieving this result for the Class.  As some of the most active TCPA class action attorneys in the country, Class Counsel were able to efficiently cut to the meat of the disputes in this case, and apply their experience to achieve a highly favorable outcome for the Class without the need for years of risky litigation.  Such an approach, under Ninth Circuit precedent, is deserving of a reasonable fee award with a modest multiplier.

a.   **Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases**

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046.  *See also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).  Standing alone, this factor supports Class Counsel's fee request.

The settlement secured by Plaintiff and Class Counsel provides an excellent recovery for Class Members as compared to similar TCPA cases, despite the uncertainty of recovery in TCPA class actions.  The Settlement Agreement provides for $6,250,000 in recovery for the Class.  Every Class Member who submits a Valid Claim Form will be entitled to a pro rata distribution of the Settlement Fund.  As of August 28, 2020, there are approximately 220,925 Class Members who have submitted Valid Claims.  Madden Decl. ¶ 19.  This translates to an approximate take rate of 9.3%.  Assuming the take rate does not change due to late notices that are accepted as valid regardless of late status (typical in cases of this nature), this would translate to approximately $15.46 per Class Member who submitted a Valid Claim Form.[4]  This figure was based on a participating class size of 220,925 claimants,

---

[4] This is expected to decrease as more claims come in over the next two weeks.

with 118 opt ins, an assumption that class notice would cost $1,550,000, that fees would be $1,250,000, that an incentive award would be $5,000, and that costs of litigation would be $30,061.51.

The settlement amount to class members is greater than numerous similar TCPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (approximately $13.75 per claimant); *Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.) (Class members were to receive between $20 and $40 dollars per claim); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (individual recovery of $20 to $40 per claimant); *Makaron v Enagic USA, Inc.*, Case No. 2:15-cv-05145-DDP-E Dkt. No. 145 (class members who made claims recovered $12 each). It is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery).

The case at bar was resolved for a sum that represents an outstanding result for the Class Members. This fact strongly supports the fees requested by Plaintiff.

b.   **The risks of litigation support the requested fees**

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the

award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47. *See also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee). Throughout litigation, Defendant raised several defenses described in the contemporaneous declarations of Class Counsel. These included risks to the merits based on the question of whether the dialing platform was an ATDS, risks to the procedure regarding whether the class action presented certifiable claims, based on individualized issues of consent, risks to the status of the entire statute based on first amendment grounds, and risks to the assessment of damages on due process grounds, among other risks. Each of these risks presented an existential problem for Class Members' claims wherein the claims would not have been allowed to proceed had these defenses born fruit.

While both sides strongly believed in the merits of their respective cases, there are risks to both sides in continuing the Litigation. See Friedman Decl, ¶¶ 19-22. If the Litigation were to continue, Plaintiff faced the risk to certification and merits issues, not to mention the delay that would inevitably result from numerous dynamic issues of law that are under review by a variety of courts and federal agencies. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seeks its Approval. *Id.* The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the TCPA. Furthermore, Judge King, who is intimately familiar with the instant litigation as well as the current climate of TCPA litigation as a whole, agrees with the parties. The Honorable Court agreed with this reasoning in preliminarily approving the settlement.

Thus, the risks of continued litigation not only depicts the high degree of results obtained for the Class, but also further support the reasonableness of the requested fees.

### c.   The skill required and quality of work performed support the requested fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel are experienced class action litigators who have been appointed "class counsel" in numerous IPA and related consumer class actions. Class Counsel have successfully prosecuted numerous complex consumer class actions, and have secured noteworthy recoveries for those classes. Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions.

In the present case, Class Counsel performed significant factual investigation prior to bringing the action, conducted extensive written discovery including the production of documents and voluminous data from Defendant, during which time all of the necessary and relevant discovery was reviewed and analyzed, including financial information. There is very little information, if anything, that was not investigated or subject to discovery. Thus, nobody could say that this case was not fully investigated, or thoroughly litigated, despite the low number of motions. Counsel aired these disputes openly and litigated them through the mediation process with Judge King overseeing the issues and assisting the parties to assess risk. Class Counsel participated in extensive formal and informal discovery, and three mediations session with Judge King here they vigorously negotiated and ultimately secured a highly favorable settlement for the benefit of Class Members. *Id*. Thus, Class Counsels' skill and expertise, reflected in the prompt and significant Settlement, supports the requested fees.

d.   **Class Counsels' undertaking of this Action on a contingency-fee basis supports the requested fees**

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work.  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery.  *See* Friedman Decl., ¶¶ 18-23.  In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating the actions; (2) conducting extensive discovery on Defendant, including information pertaining to third parties; (3) negotiating the Settlement in private mediation, and the weeks following mediation; (4) defending the settlement from intervention and objection; (5) Class counsel will also be required to oversee administration of the Settlement; and, (6) respond to hundreds of Class Member inquiries.  Class Counsel expended these resources despite the risk that Class Counsel may never be compensated especially in light of the fluctuating interpretations of the TCPA and the difficulty in securing class certification.

Class Counsel here incurred $30,061.51 in costs (as of August 31, 2020) and spent 1,047.7 hours litigating this action.  Friedman Decl., ¶¶ 24-42.  There was no co-counsel on this case.  There were no guarantees of victory, and there were numerous potentially disastrous issues raised by Defendant that could have ended

the litigation for the Class if even one of the potential motions was granted.  This type of circumstance is why lodestar multipliers are awarded by courts.

Thus, Class Counsels' "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047.  As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case.  The requested fees are fully supported by the factors enunciated by *Vizcaino* and is commensurate with the excellent results obtained for the Class and is comparable or in excess of settlements in other TCPA cases, as discussed *supra*.  Moreover, Class Co8unsel are requesting a lesser percentage of the fund than is awarded by Ninth Circuit courts as the benchmark – i.e. 20% requested vs. 25% benchmark.  Class Counsel specifically made such a request for the sake of the Class Members, despite having legal and factual justification to ask for more.  Thus, the fee requested is reasonable.  In addition, the Court may also apply the lodestar method as another optional means of cross-checking the requested fees.

### 3.    The requested fee is reasonable, fair, and justified under the lodestar method

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050.  However, a cross-check is optional.  *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check").  If the Court chooses to perform such a cross-check in this matter, it will confirm that an approximately 20% fee award of $1,250,000 is reasonable.

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate.  *Hanlon*, 150 F.3d

at 1029.  Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys.  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[5]

### a.  Class Counsels' lodestar is reasonable

The accompanying declaration of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar.  Plaintiff's attorneys' work is summarized as follows:

| NAME | HRS. INCURRED | RATE | TOTAL |
|---|---|---|---|
| TODD M. FRIEDMAN | 427.6 | $750 | $320,700.00 |
| ADRIAN R. BACON | 551.1 | $650 | 358,215.00 |
| NICK POLIS | 44.5 | $370 | 16,465.00 |
| THOMAS E. WHEELER | 24.5 | $450 | 11,147.50 |
| **TOTAL COMBINED LODESTAR** | **1,047.7** | | **$706,527.50** |

Friedman Decl. ¶ 40.  As described in the accompanying declarations, Plaintiff's attorneys have devoted a total of 1,047.7 hours to this litigation, and have a total lodestar to date of $706,527.50, which represents approximately a 1.77 multiplier.[6] *See* Friedman Decl. ¶¶ 24-42.

---

[5] The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when...there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. 2007).

[6] *See In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier).

Thus, Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case.  In this regard, tasks were reasonably divided among attorneys to ensure avoiding the replication of work. Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates billed time only where necessary.[7]  Paralegal time is not reflected in these records.  The reality is that the complexity of this matter was high, and required senior attorneys to handle to majority of tasks.

b.   **Class Counsels' hourly rates are reasonable**

Similarly, Class Counsels' hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994).  *See also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982). Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here. *See* Friedman Decl., ¶¶ 8-37.  Mr. Friedman and Mr. Bacon are also very experienced in litigating TCPA cases, including class actions, and serve as class counsel in multiple certified TCPA class actions.  *Id*.

According to the well-respected Laffey Matrix, last reviewed on August 31, 2020, reasonable rates for a Partner of a law firm practicing 11-19 years are calculated at $759 per hour.  Friedman Decl. Ex. A.  Mr. Friedman has dedicated his career to consumer protection litigation, including class action litigation under the

---

[7] Hours for paralegals and support staff are recoverable, but were zeroed for purposes of this Motion.

IPA, TCPA, FDCPA, EFTA, FCRA, and other consumer protection statutes. He has secured eight figure class-wide settlements on behalf of millions of consumers nationwide. Thus, the billing rate for Mr. Friedman of $750 per hour is well within the normal range of fees charged by firms in Southern California for partner work.[8]

Additionally, Adrian R Bacon, who has contributed much to this litigation, has significant experience in litigating consumer class actions, including TCPA class actions, which justifies his hourly rate of $650. Friedman Decl. ¶¶ 8-42. Mr. Bacon is a Partner at The Law Offices of Todd M. Friedman, P.C. He has recently been approved in numerous class action fee motions wherein Mr. Bacon requested an hourly rate of $575 per hour in the 2016-2017 time period, $625 in 2019, and $650 in 2020. Along with Todd Friedman, Mr. Bacon is the primary managing attorney who oversees litigation efforts in the majority of class action litigation at The Law Offices of Todd Friedman. Such efforts included the drafting of class certification motions in several federal consumer class actions which were certified by contested motion under Rule 23, some of which were in TCPA cases, arguing TCPA cases in front of the Ninth Circuit, and other consumer privacy class actions before the California Supreme Court, and drafting FCC petitions to advance consumer privacy rights under the TCPA. According to the same Laffey Matrix, reasonable rates for a junior partner/senior associate are calculated at $672 per hour. See Exhibit A to Friedman Decl. Thus, the billing rate for Adrian R. Bacon is well within the normal range of fees charged by firms in Southern California.

Hence, Class Counsels' combined lodestar of $706,527.50 is reasonable and supports the requested fees, with a modest multiplier.

---

[8] See *Hartless v. Clorox Co.*, 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), aff'd in part, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal 2008) (finding partner rates of $750 to $475 and associate rates of $425 to $275 reasonable).

**B.    The Requested Costs Are Fair And Reasonable**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).  The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).  Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $30,061.51.  *See* Friedman Decl., ¶¶ 25-26.  These costs were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid.  Here, the Class Notice informed Class Members that Class Counsel would seek an award of costs up to $50,000 and the Settlement Agreement authorizes a petition of costs for up to $50,000.  In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, the request for costs of $30,061.51 is reasonable.  The majority of these costs consist of necessary expert fees that were needed in order to review the outbound dial list for purposes of damages analysis and class member identification, and mediation fees paid to JAMS.  The remainder of costs consisted of filing and service fees, courier fees, travel expense, and other related expenditures that furthered the goals of this litigation and advanced the rights of Class members.  Class Counsel may incur additional costs as this case moves to the final approval stage, and will file a supplemental Declaration if that is the case.

**IV.   CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD**

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $5,000 to be distributed to the Class Representative, subject to Court approval.  Defendant has agreed not to oppose the request as long as it is not greater than $5,000.

District Courts in California have opined that in many cases, an incentive award of $5,000 is presumptively reasonable.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-*67 (N.D. Cal. Mar. 20, 2015) – finding that "[i]n this district, a $5,000 payment is presumptively reasonable.  *See also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942-*43 (9th Cir. Feb. 27, 2015) – finding that the District court did not abuse its discretion in approving settlement class in antitrust class action, despite objector's contention that the nine class representatives were inadequate because their representatives' awards, at $5,000 each, were significantly larger than the $12 each unnamed class member would receive.  *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014) – finding that Request for recovery of $5,000 incentive award for each named plaintiff in consumers' action against children's toy retailer alleging retailer violated the Fair and Accurate Credit Transactions Act (FACTA) by printing more than the last four digits of consumers' credit card numbers on customer receipts, was reasonable; parties' settlement agreement provided for incentive payments of $5,000 to each named plaintiff, those awards were consistent with the amount courts typically awarded as incentive payments.

Plaintiff played an important role in this litigation by bringing it on behalf of the Class, and providing Class Counsel with the necessary documents and information to successfully push it to this stage on behalf of absent Class members. This included assisting with the complaint, the investigation, participating in

discovery, and in mediation and settlement, as well as reviewing and approving the settlement on behalf of the Class.  Plaintiff acted dutifully in his role as a class representative, and should be awarded this reasonable sum of $5,000 for his part in the litigation.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiff's motion for an award of attorneys' fees in the total amount of $1,250,000 (20% of the Settlement Fund), litigation costs of $30,061.51; and a Class Representative Incentive Award of $5,000.

Date: August 31, 2020                          Respectfully submitted,

**Law Offices of Todd M. Friedman, P.C.**

By:/s/ Todd M. Friedman
      Todd M. Friedman, Esq.
      *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 31st day of August, 2020, with:

United States District Court CM/ECF system

Notification sent electronically on this 31st day of August, 2020, to:

Honorable Judge Andre Birotte' Jr.
United States District Court
Central District of California

Becca J. Wahlquist, Esq.
SNELL & WILMER, LLP


<u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.